**Susan B. HALTER, individually, and as sole surviving parent and next friend of Joshua Halter, Shawna Halter and Jenna Halter, Plaintiff–Appellant,**

v.

**WACO SCAFFOLDING & EQUIPMENT COMPANY, Colorado Scaffolding & Equipment Company, Inc., Thomas E. Reck, and Charles R. Duff, Defendants–Appellees.**

No. 88CA1477.

Colorado Court of Appeals, Div. V.

May 3, 1990.

Rehearing Denied May 31, 1990.

Certiorari Denied Sept. 24, 1990.

Peter Smith & Susan Young Law Offices, Peter M. Smith, Susan Y. Young, Lakewood, Schaden, Heldman & Lampert, Bruce Lampert, Denver, for plaintiff-appellant.

Greengard, Senter, Goldfarb & Rice, Thomas S. Rice, Joel S. Babcock, Denver,

for defendant-appellee Waco Scaffolding & Equipment Co.

Halaby & McCrea, Leslie L. Schluter, Denver, for defendant-appellee Colo. Scaffolding & Equipment Co., Inc.

Cooper & Kelley, P.C., Bernard B. Sapp, Denver, for defendants-appellees Thomas E. Reck and Charles R. Duff.

Opinion by Judge DAVIDSON.

Plaintiff, Susan D. Halter, appeals the summary judgment entered against her and in favor of defendants, Waco Scaffolding & Equipment Co., Colorado Scaffolding Equipment Co., Inc., and Reck/Duff Architects, on her claims in negligence and strict liability for the death of her husband. We affirm in part and reverse in part.

The decedent, a mason employed by Columbine Masonry to help erect a brick wall at Faith Presbyterian Church, was killed when scaffolding near him collapsed and, in combination with brick being stored thereon, crushed him. The scaffolding had been erected to a height of about 40 feet and, to afford protection from winter weather, had been enclosed in a protective plastic known as visqueen. The visqueen, in turn, was secured on the scaffolding with a combination of wind/weather clips and wire.

Subsequent to the accident, it was determined that the scaffolding had been erected and enclosed in an unsafe manner. Contrary to OSHA regulations, the scaffolding had been neither anchored to an existing structure nor secured by cross-bracing or vertical locks. In addition, the visqueen, which had originally been attached by means of clips that would pop off in the wind, had been reattached in several places with wire. It appears that the accident occurred when a strong gust of wind whipped against the sail-like visqueen and blew down the structure.

Asserting that they knew or should have known of the dangerous propensities of the products and set up, plaintiff, individually and as next friend of her three children, filed a wrongful death suit against the following defendants: Snow Construction Co., the general contractor for the project; Max Katz Bag Co., the manufacturer of the visqueen; Waco International, the manufacturer of the scaffolding equipment; Waco Scaffolding & Equipment Co., the supplier of the scaffolding equipment; Colorado Scaffolding & Equipment Co., Inc., the supplier of the wind clips used to secure the visqueen; and Thomas Reck and Charles Duff, d/b/a Reck/Duff Architects, the architects who designed the project and, allegedly, "administered" construction.

The claims against Snow Construction Co. were dismissed, and discovery proceeded with respect to the remaining defendants. On November 16, 1987, the trial court granted summary judgment to all defendants except as to the negligence claims against Waco International and Max Katz Bag Co. Among other grounds for the ruling, the court held that only Waco International and Max Katz Bag Co., and not the remaining defendants, owed a duty of care to the decedent and his employer.

In preparation for trial, plaintiff, Waco International, and Max Katz Bag Co. conducted additional discovery. In the course thereof, Waco International produced an engineering manual which it had supplied to Waco Scaffolding prior to the accident. Although plaintiff had previously requested both Waco International and Waco Scaffolding to produce "[a]ll written literature produced by Waco International and/or Waco Scaffolding or its agents relating to the scaffolding it produces," this manual did not come to light until plaintiff deposed a particular officer of Waco International subsequent to the summary judgment orders. The manual included specific precautions to be taken when using enclosed scaffolding in the wind.

Alleging that the delinquently produced manual provided proof that Waco Scaffolding was aware of the dangers that caused her husband's death and that it was, therefore, negligent in failing to warn Columbine Masonry or decedent thereof, plaintiff moved for reconsideration of the summary judgment in favor of Waco Scaffolding. The trial court summarily denied plaintiff's motion as untimely.

Prior to the scheduled trial date, plaintiff settled with Waco International and Max Katz Bag Co., and final judgment was entered dismissing all claims against all defendants.

Plaintiff perfected this appeal to contest the summary judgment entered in favor of Waco Scaffolding, Colorado Scaffolding, and Reck/Duff, and the denial of her motion for reconsideration.

I.

Plaintiff first contends that the trial court erred in granting summary judgment in favor of Colorado Scaffolding on her strict liability claim against it. We disagree.

■ Section 13–21–402(1), C.R.S. (1987 Repl.Vol. 6A) sets forth that:

"No product liability action based on the doctrine of strict liability in tort shall be commenced or maintained against any seller of a product ... unless said seller is also the manufacturer of said product or the manufacturer of the part thereof claimed to be defective."

Section 13–21–401(1), C.R.S. (1987 Repl. Vol. 6A), in turn, defines manufacturer. Finally, § 13–21–402(2), C.R.S. (1987 Repl. Vol. 6A) provides that: "If jurisdiction cannot be obtained over a particular manufacturer ... then that manufacturer's principal distributor or seller over whom jurisdiction can be obtained shall be deemed, for the purposes of this section, the manufacturer of the product."

The plaintiff has alleged no facts to demonstrate that Colorado Scaffolding, which distributes but does not manufacture the wind clips, falls within the definition of "manufacturer" under § 13–21–401(1). Instead, she asserts that her inability to learn the name and address of the manufacturer (which were provided by Colorado Scaffolding in its answers to plaintiff's first set of interrogatories) until after the statute of limitations had run deprived her and the court of jurisdiction. Therefore, she argues, Colorado Scaffolding is a manufacturer under § 13–21–402(2).

■ To the contrary, an expired statute of limitations does not deprive the court of jurisdiction. When asserted as an affirmative defense, it simply deprives the plaintiff of a remedy. *In re Estate of Randall,* 166 Colo. 1, 441 P.2d 153 (1968). Jurisdiction, on the other hand, relates to whether a court may subject a particular defendant, *see Public Warranty Corp. v. Mullins,* 757 P.2d 1140 (Colo.App.1988), or subject matter, *see Gutierrez v. District Court,* 183 Colo. 264, 516 P.2d 647 (1973), to its powers.

Therefore, we agree with Colorado Scaffolding that the plaintiff has presented no basis in fact for her strict liability claim against it and that summary judgment thereon was proper.

II.

Next plaintiff asserts that the trial court erred in granting the defendants summary judgment on her negligence claims. She argues that each defendant owed her husband a duty of care and that the question of whether that duty was breached by any of them is a question of fact that cannot be disposed of on summary judgment. Insofar as Waco Scaffolding's duty may not have been established on the summary judgment record, plaintiff asserts that it was established when the record was supplemented by the engineering manual and that the trial court abused its discretion in refusing to vacate the summary judgment in favor of Waco Scaffolding at that time. We agree that summary judgment was inappropriate with respect to the negligence claims against Colorado Scaffolding and Waco Scaffolding, but disagree with respect to Reck/Duff Architects.

■ Summary judgment is a drastic measure and should not be granted when the submissions on file present a genuine issue as to any material fact. *Wheeler v. County of Eagle,* 666 P.2d 559 (Colo.1983); *see* C.R.C.P. 56(c).

To recover under a negligence theory, a plaintiff must show that the defendant breached a duty of care owed to the plaintiff and thereby caused plaintiff's damages.

*Palmer v. A.H. Robins Co.*, 684 P.2d 187 (Colo.1984).

■ Whether the defendant owes the plaintiff a duty is a question of law to be determined by the court under the circumstances of each case. On the other hand, whether the defendant has breached such a duty and thereby caused damages to the plaintiff is a question of fact for the jury. *Perreira v. State*, 768 P.2d 1198 (Colo. 1989).

■ An important factor in the court's analysis of the existence of a duty is foreseeability. *Taco Bell, Inc. v. Lannon*, 744 P.2d 43 (Colo.1987). Accordingly, if damage is to be foreseen, there may be a duty to act so as to avoid it. *Metropolitan Gas Repair Service, Inc. v. Kulik*, 621 P.2d 313 (Colo.1980).

### A.

Here, plaintiff asserts that her husband's injuries were foreseeable and could have been avoided had defendants Colorado Scaffolding and Waco Scaffolding given warnings on how to use the scaffolding, clips, and visqueen in windy weather.

■ When a manufacturer or seller knows or should know of unreasonable dangers associated with the use of its product and not, as a matter of law, obvious to product users, it has a duty to warn of these dangers, and a breach of this duty constitutes negligence. *See Palmer v. A.H. Robins Co., supra; Bailey v. Montgomery Ward & Co.*, 635 P.2d 899 (Colo. App.1981). It is consistent with the general foreseeability requirements of duty to impose the same duty-to-warn test on the immediate lessor of property. *See Rinkleff v. Knox*, 375 N.W.2d 262 (Iowa 1985); *Clark v. Rental Equipment Co.*, 300 Minn. 420, 220 N.W.2d 507 (1974); Restatement (Second) of Torts § 407 (1965).

Hence, whether each defendant supplier here had a duty to warn the decedent or his employer of the dangers arising from wrapping scaffolding in visqueen and fastening it with wire as well as clips depends on a fourfold inquiry: (1) Did the defendant know or should he have known of the danger; (2) was the danger unreasonable; (3) was it associated with that defendant's product; and (4) was the danger not, as a matter of law, obvious to the product user.

The second and fourth factors are equivalent for both defendants.

■ With respect to the second, we conclude that the real danger of collapsed scaffolding in the windy winter is unreasonable when weighed against the simplicity of providing warnings.

With respect to the fourth, all defendants assert that the danger of securely enclosed scaffolding blowing over in early February would have been obvious to the kind of user here, a masonry subcontractor.

■ Although it is proper to consider the professional or amateur status of the user, *see Clark v. Rental Equipment Co., supra,* such status is not dispositive of the inquiry. *Merklin v. United States*, 788 F.2d 172 (3rd Cir.1986). To sustain a conclusion that no duty was owed to the user on this ground, we must find the record evidence to be undisputed that the user actually knew of the danger or that, based on the user's special expertise and the circumstances of the transaction, the supplier reasonably could have believed that he knew of the danger. *See Laaperi v. Sears, Roebuck & Co., Inc.*, 787 F.2d 726 (1st Cir.1986). *Gordon v. Niagara Machine & Tool Works*, 574 F.2d 1182 (5th Cir.1978); *Grady v. American Optical Corp.*, 702 S.W.2d 911 (Mo.App.1985); *Cf. Martinez v. Dixie Carriers, Inc.*, 529 F.2d 457 (5th Cir.1976) (where decedent and his employer knew of the dangers associated with handling defendant's product and defendant provided warnings adequate for persons with such knowledge, no additional duty to warn exists); *State v. Bethlehem Steel Corp.*, 22 Mass.App. 641, 496 N.E.2d 449 (1986) *aff'd in part, rev'd in part on other grounds* 400 Mass. 378, 510 N.E.2d 249 (1987) (where injured employee's co-worker designed the malfunctioning machine and selected solution to remedy repairer's mistake in making repair, repairer could rely on the expertise of the designer rather

than having duty to warn of possible malfunction caused by designer's remedy).

■ Both Columbine's president and the general contractor's construction superintendent testified that they had no previous experience with either totally enclosing scaffolding with visqueen or with securing visqueen with wind clips. In addition, both the superintendent and Columbine's foreman testified that the structure was sturdy when tested on the day it was built and remained unaffected by winds during the 1½- to 2-week period between its erection and the accident.

Although the defendants submitted documentation that Columbine was charged with violating OSHA regulations relating to construction of the scaffolding, they have cited no regulations relating to the attachment of visqueen or any other material thereto. Nor have the defendants directed us to any portion of the record indicating that the professional expertise of a masonry subcontractor or of a contractor includes this kind of knowledge.

Because the record demonstrates a dispute as to whether the dangerous condition was obvious, we conclude that such factor does not at this early stage of the proceedings foreclose the existence of a duty on the part of defendants. *See Laaperi v. Sears, Roebuck & Co., supra.*

The remaining two prongs of the duty inquiry must be analyzed with respect to the individual defendants.

The product supplied by Colorado Scaffolding was an order of wind clips. The danger of creating a sail with the visqueen was intimately associated with this product in that the clips were purchased specifically for securing the visqueen and thereby creating a warm, wind-proof interior. We have found no evidence in the record that wind clips have any other purpose.

■ Colorado Scaffolding argues that, in as much as the wind clips were misused, it did not know or have reason to know of the danger and that it could not have foreseen the accident. Although we acknowledge that the clips may have been misused in two ways, this misuse does not absolve

Colorado Scaffolding from a duty to warn under the circumstances. One of the misuses, shortening the clips, has in no way been linked to the accident. The second misuse, reinforcing the clips with wire, can reasonably be interpreted to have been a foreseeable misuse.

It is undisputed that the clips were snapping off in the wind. It is also undisputed that Columbine and the general contractor added wire in direct response to the clips' failure to keep the visqueen securely attached.

■ Plaintiff asserts that the snapping off is a safety feature to warn workers that the wind is too severe for enclosed scaffolding and that the decedent's coworkers, had they been warned of the feature, would not have added the wire. In fact, the attorney for Colorado Scaffolding confirmed in the summary judgment hearing that the characteristic of the clips to snap off in windy conditions was a "feature."

Considering the purpose of the wind clips to secure visqueen in cold and windy weather, and the characteristic of the clips to pop off in severe wind, we conclude, on the record before us, that Colorado Scaffolding knew or should have known of the risk that the workers, absent a warning to the contrary, would seek more secure means of attachment, *see Gordon v. Niagara Machine Tool Works, supra* (manufacturer should have known of likelihood of haphazard practices of its customers in handling and preserving service manuals); *Germann v. F.L. Smithe Machine Co.*, 395 N.W.2d 922 (Minn.1986) (employer's failure to replace safety bar on hydraulic press, which had to be removed for maintenance, was foreseeable misuse in absence of warning), and that Colorado Scaffolding did have a duty to warn of the danger of doing so.

The product supplied by Waco Scaffolding, the scaffolding itself, was also associated with the danger. It was the scaffolding, buoyed by the tightly wrapped visqueen, that blew over onto the decedent.

Nonetheless, Waco Scaffolding argues that it neither knew or should have known of the danger because it was unaware that visqueen was to be attached.

We agree that the evidence in the abbreviated summary judgment record before us contains sparse evidence of Waco's knowledge. It knew that the equipment was being rented in the winter but did not know for what purpose. In addition, plaintiff has cited no evidence in the summary judgment record that Waco Scaffolding had knowledge of methods of using visqueen with its product. Without more evidence of Waco Scaffolding's knowledge of the risk, we conclude that it had no duty to warn under the circumstances and that, at the time it was granted, summary judgment in its favor was proper.

However, after the summary judgment order, but before final judgment had been entered, plaintiff submitted the delinquently produced engineering manual showing that Waco Scaffolding had notice of the precautions necessary when enclosing scaffolding in visqueen. It also submitted an affidavit by an engineer explaining the relevance of the precautions in the engineering manual and stating that a masonry contractor would not independently know that information.

Citing C.R.C.P. 54(b), which provides that any order not made final "is subject to revision at any time before the entry of judgment adjudicating all the claims," plaintiff argues that the trial court erred in failing even to consider the new evidence and in refusing to vacate the summary judgment. We agree.

Decisions with respect to motions to reconsider prior rulings in the case may not be reversed unless the circumstances show that the trial court abused its discretion. See *Verzuh v. Rouse*, 660 P.2d 1301 (Colo.App.1982).

Here, the relevant circumstances are that the plaintiff, by way of interrogatories and requests for production, requested that Waco Scaffolding and Waco International divulge and produce "[a]ll written literature produced by Waco International and/or Waco Scaffolding or its agents relating to the scaffolding it produces...."

After Waco Scaffolding objected with respect to "any literature concerning types of equipment which were not in use at the Faith Presbyterian Church project," plaintiff also requested that Waco produce the following:

"[A]ll engineering or design tests, studies or calculations related to the scaffolding systems used at the Faith Presbyterian Church. (What is contemplated here are such studies or calculations done prior to the product being sold or leased to users.)"

The engineering manual included calculations concerning not only the scaffolding used at Faith Church, but also the very situation that caused the accident. Therefore, it should have been produced pursuant to plaintiff's discovery requests. The reason it was not available for consideration during the original summary judgment hearing was not plaintiff's lack of diligence, but rather Waco Scaffolding's and Waco International's failure to produce it.

In addition, we conclude that the addition of the manual into the record shows that Waco Scaffolding did have, at minimum, constructive knowledge of the precautions necessary when enclosing its scaffolding with visqueen and, therefore, that it had a duty to warn thereof. We note that to support Waco Scaffolding's duty it is not necessary that the company actually have known that Columbine intended to enclose the scaffolding but only that such use was foreseeable. See *Germann v. F.L. Smithe Machine Co., supra.* The coldness of the season and the large quantity of the order (from which it could be inferred that the use would be outdoors) were sufficient for this.

For these reasons, we hold that the trial court abused its discretion in refusing to reconsider and vacate its prior summary judgment order in favor of Waco Scaffolding.

### B.

Plaintiff's negligence claim against the project architects, Thomas Reck and

 

Charles Duff, is based on their alleged duty to "administer" construction, including inspecting the site, with due care. She maintains the trial court erred in concluding that no such duty exists. The architects, on the other hand, argue that they owed no such duty to plaintiff's decedent and, even if they did, that they are immune from liability in tort under the Workmen's Compensation Act. Because we conclude that the architects are immune under the Workmen's Compensation Act, we do not address the issue of whether they owed plaintiff's husband a duty of care.

Section 8–48–102, C.R.S. (1986 Repl.Vol. 3B) of the Workmen's Compensation Act provides immunity from liability for statutory employers of employees who are eligible for Workmen's Compensation benefits. Included within the definition of employer are the owners of real property who have contracted out for work, and their employees, servants, and agents. Section 8–48–102(2), C.R.S. (1986 Repl.Vol. 3B). Although there are exemptions set forth in the statute, § 8–48–102(3) (1986 Repl.Vol. 3B), they are inapplicable here.

The architects' contract with Faith Church explicitly stated that: "The Architect shall be a representative of the Owner during the construction phase ... and shall have authority to act on behalf of the Owner ... to the extent provided in the Contract Documents." This language describes an agency relationship between the architects and the owner. *See Victorio Realty Group, Inc. v. Ironwood IX,* 713 P.2d 424 (Colo.App.1985); *Black's Law Dictionary* 1170 (5th ed. 1979) (term "representative" is interchangeable with "agent").

Accordingly, the architects are immune from liability pursuant to § 8–48–102(2).

The summary judgments dismissing plaintiff's negligence claim against Thomas E. Reck and Charles R. Duff, d/b/a Reck/Duff Architects, and her strict liability claim against Colorado Scaffolding are affirmed. Those dismissing plaintiff's negligence claims against Colorado Scaffolding are affirmed. Those dismissing plaintiff's negligence claims against Colorado Scaf-

folding and Waco Scaffolding are reversed, and the cause is remanded for further proceedings. .

NEY and RULAND, JJ., concur.