**Roland P. BIGBY, Plaintiff–Appellant and Cross–Appellee,**

**v.**

**BIG 3 SUPPLY COMPANY, a Colorado Corporation; McMillan Sales Corporation, a Colorado Corporation; and Michael B. Maslanik, Defendants–Appellees and Cross–Appellants.**

No. 94CA1819.

Colorado Court of Appeals, Div. III.

June 13, 1996.

As Modified on Denial of Rehearing Aug. 29, 1996.

Certiorari Denied May 27, 1997.

Law Office of David C. Feola, David C. Feola, Denver, for Plaintiff–Appellant and Cross–Appellee.

Krieger, Hale, Frankl & Mulcahy, Keith E. Frankl, Englewood, for Defendants–Appellees and Cross–Appellants.

Opinion by Judge ROTHENBERG.

In this action premised, *inter alia,* on an alleged violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq. (1994), plaintiff, Roland Bigby, appeals the summary judgment entered in favor of his employer, Big 3 Supply Company (Big 3). Defendants, Big 3, McMillan Sales Corporation (McMillan), and Michael Maslanik, cross-appeal the judgment entered upon a jury verdict in favor of Bigby on his claims for outrageous conduct and negligent infliction of emotional distress. We reverse and remand for further proceedings.

Bigby, a journeyman plumber, was hired in 1991 by Big 3, a supplier of building materials, as a truck driver and warehouse person. Bigby's supervisors occasionally loaned him to transport materials for McMillan, another building supply company under the same management as Big 3.

In late 1992, Bigby suffered a heart attack. His doctors discharged him from the hospital after about a week of recovery with instructions that he could return to work in another week, provided he took things slowly at first. Bigby kept his supervisors informed of his

condition and asked when and under what conditions he could return to work.

Bigby next saw his supervisors at the Big 3 company Christmas party. They took Bigby aside and informed him that Big 3's president, Michael Maslanik, had decided to fire him because of the heart attack. Without consulting Bigby or his doctors, Maslanik had decided Bigby could not perform the strenuous loading and unloading that the warehouse and truck driving involved, and that the company had no other positions for which he was qualified. Big 3 sent Bigby a follow-up letter confirming that: "Roland Bigby was terminated from our employ because of health reasons + management determined he was not qualified for any other position."

Bigby filed a charge of discrimination with the Equal Employment Opportunity Commission, which forwarded the claim to the Colorado Civil Rights Commission (Colorado Commission). The Colorado Commission determined that Bigby's employers had regarded him as disabled because of the heart attack and had fired him because of this disability in violation of the Colorado Anti-Discrimination Act, § 24-34-402 (1988 Repl. Vol. 10A) (CADA). Based upon this determination, the Colorado Commission sent Bigby a right to sue letter.

Bigby then filed suit against Big 3, its president Michael Maslanik, and Maslanik's other supply company, McMillan. Bigby alleged that his firing violated the ADA, the CADA, and also constituted outrageous conduct and negligent infliction of emotional distress.

At the time of Bigby's termination, the ADA applied only to employers with 25 or more employees. 42 U.S.C. § 12111(5) (1994); see Doe v. William Shapiro, Esquire, P.C., 852 F.Supp. 1246 (E.D.Pa.1994) (explaining jurisdictional thresholds under the ADA). And, although McMillan had more than 25 employees, Big 3 did not. In order to meet the ADA's jurisdictional threshold, Bigby alleged that he was an employee of McMillan as well as Big 3. The trial court rejected Bigby's combined employer theory and entered summary judgment for McMillan.

Bigby proceeded to trial on his CADA and tort claims against Big 3 and Maslanik. The trial court acted as finder of fact on the CADA claim, while a jury decided his tort claims.

The evidence at trial showed that Maslanik decided to fire Bigby on the presumption that his heart attack prevented him from working. Maslanik did not seek information concerning Bigby's actual medical condition, did not attempt to provide any reasonable accommodation for Bigby, and did not consider the fact that Bigby was qualified to work in the less strenuous but better paying job of counterman.

The trial court found that Big 3 and Maslanik had discriminated against Bigby because they perceived his heart attack to be a handicap, in violation of the CADA. The court awarded Bigby $3,839 in back pay plus court costs. The jury found for Bigby on his outrageous conduct and negligent infliction of emotional distress claims and awarded him $25,000 in compensatory damages for each claim. It also awarded Bigby $25,000 in punitive damages for the outrageous conduct claim. Based upon these findings and the jury verdict, the trial court entered judgment for Bigby.

## I. Bigby's Appeal

■ Bigby asserts that the trial court erred in granting summary judgment against him on his ADA claim. More specifically, he contends that there is a genuine issue of material fact whether Big 3 and McMillan are the same employer for purposes of meeting the statutory threshold of 25 employees in his ADA claim. We remand for further proceedings on the ADA claim.

Using an analysis known as the "joint employer doctrine," some courts hold that, when an entity exercises sufficient control over an individual's compensation, terms, and conditions of employment, it will be considered the individual's employer, even though the individual may be directly employed by another entity as well. See Magnuson v. Peak Technical Services, Inc., 808 F.Supp. 500 (E.D.Va.1992).

Other courts have analyzed the issue of who is an employer using a "single employer" theory. Under this analysis, two separate entities are considered a single employer when they share: (1) an interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership or financial control. *See Frank v. U.S. West, Inc.*, 3 F.3d 1357 (10th Cir.1993); *Baker v. Stuart Broadcasting Co.*, 560 F.2d 389 (8th Cir.1977). This test can be satisfied without meeting all four prongs. *Armbruster v. Quinn*, 711 F.2d 1332 (6th Cir.1983).

■ Plaintiffs bear the burden of proving by a preponderance of evidence that their employer meets the 25 employee threshold of the ADA, but all inferences should be drawn in favor of the exercise of jurisdiction to afford plaintiffs an opportunity to establish the jurisdictional threshold at trial. *Smith v. Jones Warehouse, Inc.*, 590 F.Supp. 1206 (N.D.Ill.1984).

At the outset, Bigby submitted deposition testimony and exhibits attempting to show the interrelationship between Big 3 and McMillan. Bigby's evidence established that: Maslanik is the president, manager, director, and part owner both of Big 3 and McMillan; Maslanik made hiring and firing decisions for both companies; at times Maslanik ordered employees of one company to work for the other; and Bigby was occasionally ordered to work for McMillan.

The trial court concluded that Bigby had alleged facts based solely upon his beliefs. It thus considered Bigby's evidence insufficient to create a genuine issue of material fact and, on September 12, 1994, the court granted summary judgment for defendants. We perceive no error in this regard.

However, on September 26, 1994, Bigby filed a motion to reconsider entry of summary judgment and for C.R.C.P. 54(b) certification. On October 24, 1994, Bigby also filed a motion to supplement his earlier motion for reconsideration with additional submissions. In the motion to supplement, Bigby alleged that defendants had produced financing statements requested in earlier interrogatories, and Bigby had had an opportunity to interview defense witnesses. From these sources, Bigby alleged that he had discovered further evidence of the companies' interrelatedness that was not available earlier.

Bigby's new submissions showed that: the companies exchanged inventory at cost and McMillan held a security interest in all of Big 3's inventory; all Big 3 employees were insured under McMillan's health plan so that McMillan considered Bigby its own employee for purposes of health insurance; and Maslanik ran both companies out of his McMillan offices because he liked to keep his financial people in the same place.

On October 24, 1994, the trial court denied Bigby's motion for reconsideration and also denied his request for certification of the order granting summary judgment as a final judgment pursuant to C.R.C.P. 54(b). However, the court did not rule on Bigby's motion to supplement which had been filed that same day.

■ Summary judgment is inappropriate unless there is a clear showing that no genuine issue exists as to any material fact. The burden of establishing the lack of a triable issue is upon the moving party. *Ginter v. Palmer & Co.*, 196 Colo. 203, 585 P.2d 583 (1978).

■ Once a moving party makes a convincing showing that genuine issues of fact are lacking, the burden is on the opposing party to demonstrate by relevant and specific facts that a real controversy exists. *Ginter v. Palmer & Co., supra.* All doubts as to whether an issue of fact exists must be resolved against the moving party. *Mancuso v. United Bank*, 818 P.2d 732 (Colo.1991).

■ Even though a partial summary judgment may have been entered, the trial court has discretion to reconsider its ruling before the entry of final judgment. C.R.C.P. 54(b). If new evidence comes to light which raises further disputes of material fact because of the moving party's failure properly to disclose it, and the non-moving party brings the new evidence before the trial court at the first opportunity, the court should reconsider its earlier ruling. *Halter v. Waco Scaffold-*

*ing & Equipment Co.,* 797 P.2d 790 (Colo. App.1990).

In *Halter,* evidence came to light that had been unavailable during the original summary judgment hearing because of defendants' failure to produce it, despite an earlier request to do so. Under such circumstances, the *Halter* court concluded that the trial court's failure to reconsider its earlier ruling in the light of the new information was an abuse of discretion. Similarly, here, Bigby alleged that his failure to produce the additional materials was not based on a lack of due diligence but, rather, on defendant's failure to produce them despite an earlier request to do so. Bigby urges that the *Halter* ruling is dispositive and requires reversal of the summary judgment as a matter of law. We agree.

When all of the submissions presented to the trial court are considered, Bigby has established facts supporting all four prongs of the single employer test: (1) the companies' operations were interrelated because they shared employees and benefit plans; (2) the companies had common management; (3) Maslanik's decision to run both companies out of his McMillan office shows a centralized control of labor relations; and (4) because Maslanik was part owner of both companies and he commingled their funds and inventory, there was common ownership and financial control. Although the defendants pointed to other evidence of corporate separateness, focusing on McMillan's lack of day-to-day control over Bigby, the issue before the trial court was whether the evidence considered in the light most favorable to Bigby established a controversy as to the two companies' interrelatedness.

Applying that standard, we conclude that the supplemental evidence in Bigby's depositions and interrogatories raises a genuine issue of material fact whether Big 3 and McMillan should be treated as one employer to meet the ADA's jurisdictional threshold and, thus, precludes entry of summary judgment. In so holding, we need not decide whether to adopt the joint employer doctrine or the single employer theory because we would reach the same result using either analysis.

## II. Defendants' Cross–Appeal

In their cross-appeal, the defendants concede the trial court's award of back pay and costs under the CADA, but they challenge the judgment entered on the jury verdicts for negligent infliction of emotional distress, outrageous conduct, and punitive damages.

### A.

■ Initially, we reject defendants' argument in this appeal that the judgment is void because such matters are relegated to the exclusive jurisdiction of the Workers' Compensation Act. Defendants failed to raise this as an affirmative defense before the trial court. Nevertheless, they contend that because the defense is jurisdictional in nature, it cannot be waived. We disagree.

A panel of this court recently held that, unlike a jurisdictional issue, which can be raised at any time, the exclusivity of workers' compensation is an affirmative statutory defense which must be timely raised, or it is waived. *Borquez v. Robert C. Ozer, P.C.,* 923 P.2d 166 (Colo.App. 1995). Since defendants failed to raise the issue before the trial court, we will not consider it for the first time on appeal.

### B.

However, we do agree with defendants' next assertion that the present facts provide an inadequate legal basis to sustain claims of outrageous conduct and negligent infliction of emotional distress and, therefore, that the tort claims should have been dismissed as a matter of law.

During trial, defendants moved for judgments of dismissal and directed verdicts on both tort claims, asserting that Bigby had failed to state legally cognizable claims for outrageous conduct and negligent infliction of emotional distress. The trial court denied the motions, concluding that the act of firing an employee without investigating that employee's disability could be considered outrageous and that Bigby suffered severe enough mental anguish to meet the threshold of

harm for the negligent infliction of emotional distress claim.

▮ Judgment notwithstanding the verdict is appropriate, *inter alia*, when there was never a genuine issue as to any material fact for the jury to consider and the moving party was entitled to judgment as a matter of law. C.R.C.P. 59(e)(2). *See Alexander v. First National Bank*, 169 Colo. 252, 455 P.2d 861 (1969).

### 1. Outrageous Conduct

▮ In order to constitute outrageous conduct, an action must go beyond all bounds of decency, and be so atrocious as to cause an average member of the community to exclaim, "Outrageous!" *Rugg v. McCarty*, 173 Colo. 170, 476 P.2d 753 (1970).

▮ The mere firing of an employee, without more, is not enough to support a claim of outrageous conduct. *Grandchamp v. United Air Lines, Inc.*, 854 F.2d 381 (10th Cir.1988), *cert. denied*, 489 U.S. 1080, 109 S.Ct. 1534, 103 L.Ed.2d 838 (1989). While an employer may be aware that firing an employee could cause emotional distress, an employer who is legally entitled to fire an employee will not be held liable for any emotional distress incidental to that discharge. *See* Restatement (Second) of Torts § 46 comment g (1965) (an actor will not be liable for emotional distress caused by merely insisting upon his or her legal rights in a permissible manner).

▮ However, an action in tort may lie when an employer, intending to cause emotional distress, fires an employee in a manner specifically calculated to cause emotional distress. *Churchey v. Adolph Coors Co.*, 759 P.2d 1336 (Colo.1988) (citing *Agis v. Howard Johnson Co.*, 371 Mass. 140, 355 N.E.2d 315 (1976) (firing employees in alphabetical order until one of them admitted stealing could constitute outrageous conduct)).

▮ Here, Bigby hinges his outrageous conduct claim on the fact that defendants had violated the CADA by firing him. He acknowledges that, as an at-will employee, he could be fired without cause and that Big 3 could have fired him if he were healthy.

According to Bigby, however, because Big 3 could not fire him based on his heart condition, a perceived disability under the statute, this unlawful act by itself was so unreasonable and atrocious as to constitute outrageous conduct. We disagree.

Under Bigby's theory, any employment discrimination claim, whether based on race, national origin, religion, sex, age, or disability, *regardless of the attendant circumstances*, would automatically constitute outrageous conduct. We conclude that the tort of outrageous conduct does not reach so far.

In *Grandchamp v. United Air Lines, Inc.*, *supra*, plaintiffs alleged that they had been fired in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. (1988). They further alleged that this violation constituted outrageous conduct. However, after reviewing Colorado law on the tort of outrageous conduct, the United States Court of Appeals for the Tenth Circuit held that it was not the mere fact of discharge but the *manner of discharge* which was central to the tort.

Thus, to hold that every discrimination claim automatically constituted outrageous conduct would stretch the tort far beyond its intended boundaries. The court also concluded that if an employer had engaged in unlawful discrimination, the proper remedy was a claim under the appropriate anti-discrimination statute. *Grandchamp v. United Air Lines, Inc.*, *supra*. *See also Patton v. University of Chicago Hospitals*, 706 F.Supp. 627 (N.D.Ill.1989) (employee's remedy for alleged age discrimination was an action under the Age Discrimination in Employment Act, and claim for intentional infliction of emotional distress would not lie where employer did not fire employee in order to cause emotional distress).

As in *Grandchamp*, Bigby did not allege or prove that the manner of his discharge was outrageous. Bigby's employer did not harass, humiliate, or denigrate him in any way. To the contrary, the evidence showed that when Bigby's supervisors discovered that he had come to the company Christmas party, they discreetly took him aside and informed him that he had been discharged. The sea-

sonal timing of the firing was unfortunate, but the record shows that it was accidental.

While there may be no nice way to fire an employee, Bigby did not establish circumstances supporting an outrageous conduct claim. *See Gwin v. Chesrown Chevrolet*, 931 P.2d 466 (Colo.App.1996) (discharge of at-will employee rose to level of outrageous conduct when motivated by invidious racial discrimination and accompanied by public humiliation and abusive treatment); *Wing v. JMB Property Management Corp.*, 714 P.2d 916 (Colo. App.1985) (humiliation, ridicule, threats, and sexual harassment culminating in discharge may constitute outrageous conduct).

In summary, legislative enactments have made unlawful the actions of employers who discharge employees because of a disability and, in such cases, employers must answer to those laws. However, not every violation of such laws is outrageous. Such is the case here. We thus conclude that Bigby failed to state a cognizable claim for outrageous conduct and, on remand, the trial court is directed to enter judgment notwithstanding the verdict for defendants on that claim.

## 2. Negligent Infliction of Emotional Distress

■ Likewise, we conclude that Bigby did not present a cognizable claim for negligent infliction of emotional distress.

In denying defendants' motion for judgment of dismissal, the trial court did not address defendants' legal argument that an action for negligent infliction of emotional distress will not ordinarily lie in the context of at-will employment. Rather, the court focused on the nature of Bigby's harm, holding that Bigby had presented sufficient evidence of severe stress, anxiety, and sleeplessness to permit consideration of the claim by the jury.

■ The first element of a negligence claim is the existence of a legal duty which the defendant owes to the plaintiff. *Lininger v. Eisenbaum*, 764 P.2d 1202 (Colo.1988). Some risk of emotional distress to employees is inevitable in at-will employment. However, the fact that an employer may know or reasonably expect the termination of an at-will employee to cause emotional distress does not impose upon the employer a legal duty to refrain from firing employees. *See Wing v. JMB Property Management Corp., supra* (refusing to recognize the tort of negligent termination); *Chellsen v. Pena*, 857 P.2d 472 (Colo.App.1992) (termination of employment should not be translated into a tort in order to avoid an obstacle to recovery on a contract theory).

■ We recognize that courts may look to legislation as a source of previously unrecognized duties and standards of conduct. Restatement (Second) of Torts § 286 (1965). Thus, if one purpose of the CADA is to prevent employees from experiencing emotional distress from adverse employment decisions caused by their disabilities, then defendants may have arguably breached this duty in firing Bigby because of his heart attack. Bigby did testify that being fired because of his heart attack made him "feel like a cripple."

However, our review of the CADA convinces us that the General Assembly intended the CADA to protect disabled workers' jobs, rather than to protect them from emotional distress. Under the CADA, the only relevant remedies available for a statutory violation are reinstatement and back pay. Sections 24–34–402 and 405, C.R.S. (1988 Repl.Vol. 10A). Plaintiffs are not entitled to recover general damages under that statute to compensate them for pain, suffering, and emotional distress.

Accordingly, we hold that an action for negligent infliction of emotional distress cannot be premised solely upon a violation of the CADA. *See* Restatement (Second) of Torts § 288(e) and (f) (1965) (legislation imposes duty only with respect to the interest or harm which is the object of the legislation); *see also Patton v. University of Chicago Hospitals, supra* (where Age Discrimination in Employment Act did not provide for general damages, plaintiff could not recover for his emotional suffering). On remand, the trial court is thus directed to enter judgment notwithstanding the verdict in favor of defendants on that claim.

Because Bigby has not yet established his right to pursue a claim under the ADA, and because the ADA provides for general damages including emotional distress, we do not consider whether an action for negligent infliction of emotional distress can be premised solely upon a violation of the ADA. We note only that, if Bigby does pursue a claim for negligent infliction of emotional distress on remand along with his ADA claim, he may only be compensated once for the emotional distress he suffered as a result of being fired because of his perceived disability.

### 3. Interest

Bigby also argues that the trial court erroneously failed to grant his motion for statutory interest on the jury verdicts under § 13–21–101, C.R.S. (1987 Repl.Vol. 6A). Defendants did not oppose Bigby's motion for statutory interest on the tort claims, but the trial court never addressed it and it was deemed denied by operation of law. C.R.C.P. 59(j).

On appeal, however, defendants claim that Bigby is not entitled to interest because he did not suffer a personal injury.

Initially, we note that Bigby does not assert his CADA claim is a personal injury claim for the purposes of statutory interest under § 13–21–101, C.R.S. (1987 Repl.Vol. 6A). He seeks only interest on the awards for outrageous conduct and negligent infliction of emotional distress.

Although we agree with Bigby that these torts do involve personal injury, *see Landsberg v. Hutsell,* 837 P.2d 205 (Colo.App.1992), nevertheless, because we have held that defendants are entitled to judgment notwithstanding the verdict on these two tort claims, the trial court's failure to add statutory interest is now moot.

### III.

██ Both sides disagree on the scope of the remand for further proceedings on the ADA claim and, since this issue is likely to arise, we address it here.

Bigby contends that since the ADA and CADA employ the same definitions of disability and discrimination, the trial court's finding of discrimination on the CADA claim collaterally estops the defendants from contesting liability under the ADA. According to Bigby, if he can establish the jurisdictional threshold, the new trial should be limited to compensatory and punitive damages only. He also asks for attorney fees and costs available under the ADA.

Defendants argue that any new trial on the ADA claim should be a full trial on the merits so they can have an opportunity to present their defenses. We agree with defendants.

Bigby seeks punitive damages on remand which are available under the ADA. *See* 42 U.S.C. § 1981a(b) (1994). In order to determine whether defendants' conduct merits an award of punitive damages, the jury will have to consider all the facts to determine the culpable quality of that conduct. Hence, we conclude that Bigby's claims are incompatible with a damages-only trial. Thus, if the trial court reinstates the ADA claim, a full trial of Bigby's ADA claim on the merits is required. *See Boulder Valley School District R–2 v. Price,* 805 P.2d 1085 (Colo.1991).

The judgments are reversed and the cause is remanded for further proceedings consistent with this decision.

HUME and KAPELKE, JJ., concur.