Patricia L. MELEEN

v.

HAZELDEN FOUNDATION.

Civ. No. 4–87–920.

United States District Court,
D. Minnesota,
Fourth Division.

June 29, 1990.

Donna L. Roback, Mahoney, Walling & Kelley, and Richard T. Wylie, Minneapolis, Minn., for plaintiff.

Paul C. Peterson, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, Minn., for defendant.

## ORDER

ROSENBAUM, District Judge.

This matter is before the Court on defendant's second motion for summary judgment, pursuant to Rule 56, Federal Rules of Civil Procedure (Fed.R.Civ.P.). A hearing was held on February 12, 1990, at Hamline Law School. Based upon the files, records, and proceedings herein, and for the reasons set forth below, defendant's motion is granted and the plaintiffs cause is dismissed.

### I. Background

Plaintiff, a Wisconsin resident, is a former employee of defendant, Hazelden Foundation (Hazelden). Hazelden is a non-profit corporation organized under the laws of Minnesota, which operates a chemical dependency treatment center in Center City, Minnesota. Jurisdiction is proper under 28 U.S.C. § 1332.

The plaintiff was employed at Hazelden as a chemical dependency counselor from June 15, 1983, until June 7, 1987. This action arises out of the termination of that employment. The problem arose in December 1986, when a former patient, whom plaintiff had counseled during his participation in the defendant's aftercare program, contacted defendant's president. The former patient alleged that plaintiff had entered into a social and sexual relationship with him immediately after his discharge from Hazelden.[1]

As a result of this claim, defendant created a committee to investigate the patient's allegations. Plaintiff was advised of the allegations against her on April 9, 1987, and was suspended with pay, pending the investigation. Upon completion of the investigation, defendant concluded that

sexual conduct did occur. Plaintiff was terminated on June 3, 1987.

On October 16, 1987, plaintiff commenced this action alleging wrongful termination of employment (Count I), defamation (Count II), negligence (Count III), violation of her civil rights (Count IV), negligent infliction of emotional distress (Count V), and intentional infliction of emotional distress (Count VI). Defendant first sought summary judgment in 1988, claiming that plaintiff's claims were barred by Minnesota Statutes, § 148A.03(d).

Oral arguments on the first motion for summary judgment motion were heard June 2, 1988. In an order dated July 22, 1988, this Court certified to the Minnesota Supreme Court the question of whether Minn.Stat. § 148A.03(d) barred plaintiff's claims. The Minnesota Supreme Court held that plaintiff's claims were not barred by § 148A.03(d). *Hazelden Foundation v. Meleen*, 435 N.W.2d 53 (Minn.1989).

Thereafter, in an order dated February 14, 1989, this Court denied defendant's first summary judgment motion. Upon review of its July 22, 1989, and February 14, 1989, orders, this Court, on February 24, 1989, requested supplemental memoranda regarding defendant's alternative grounds for summary judgment on plaintiff's claims for defamation, negligence, and civil rights violations.

On May 1, 1989, this Court granted defendant summary judgment on plaintiff's negligence and civil rights claims, dismissing Counts III and IV. Further, the Court indicated that defendant would be permitted to renew its summary judgment motion on the defamation claim upon completion of discovery. Discovery in this case was closed on December 1, 1989. Defendant now moves for summary judgment on the defamation claim, and on the remaining claims.

### II. The Present Motion

#### A. Summary Judgment Standards

Summary judgment is appropriate if there is no genuine issue as to any material

---

**1.** In March 1987, following negotiations between defendant and the patient, all claims which he may have had against defendant and its employees were settled.

fact and the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Prior to the Federal Rules of Civil Procedure and notice pleading, motions to dismiss a complaint or strike a defense were the primary tools to prevent factually insufficient claims from proceeding to trial. *Id.* Under notice pleading, summary judgment assumes this integral function. *Id.*

■ Summary judgment may be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to its case and on which that party will bear the burden of proof at trial. *Id.* at 322–23, 106 S.Ct. at 2552. The party opposing summary judgment must produce concrete facts demonstrating there is a genuine issue of fact for trial. *Buford v. Tremayne,* 747 F.2d 445, 447 (8th Cir.1984).

### B. The Parties' Contentions

In its present motion, defendant contends that a) plaintiff's claim of wrongful discharge should be dismissed because defendant followed its policies and procedures in good faith and did not breach any contract with the plaintiff; b) plaintiff's defamation claim should be dismissed because there is no evidence of actual malice to defeat defendant's qualified privilege; c) plaintiff's negligent infliction of emotional distress claim should be dismissed because plaintiff was neither in a zone of physical danger nor can she establish a direct invasion of her rights in order to come within the exception to the zone of danger rule and because plaintiff cannot show the requisite physical manifestations of harm; and d) plaintiff's intentional infliction of emotional distress claim should be dismissed because defendant's conduct was not extreme and outrageous and plaintiff's distress was not severe.

Plaintiff responds by arguing a) defendant breached an employment contract existing between her and the defendant by failing to follow three Hazelden policies; b) defendant lost its qualified privilege as a defense to the defamation claim by abusing it; c) she has had the necessary physical manifestations of emotional distress and she fits within the exception to the zone of danger rule because defamation constitutes a direct invasion of her rights; and d) outrageous conduct is shown because of defendant's position of power, defendant's knowledge of her susceptibility to distress, and the nature of the allegations and the investigative procedures undertaken.

### III. Analysis

#### A. Count I—Wrongful Termination

In Count I of her complaint, plaintiff alleges she was wrongfully terminated from her employment. Plaintiff asserts defendant failed to comply with certain policies governing the terms and conditions of her employment thereby breaching its contract with her.

■ Plaintiff contends there are three separate employment policies enforceable against defendant. Plaintiff first points to Hazelden Policy No. 5–001, Separation from Hazelden Employment. Policy No. 5–001 provides that "[g]ross violations of conduct or organization rules are cause for immediate dismissal or suspension with no advance notice required." Policy No. 5–001 sets out progressive disciplinary actions ranging from verbal warnings to suspension or discharge. Plaintiff contends that, because she denies the sexual conduct, the question of whether she committed a "gross violation of conduct or organization rules," which would justify an immediate discharge under Policy 5–001, remains at issue.

Plaintiff next points to Hazelden Policy No. 8–010, Sexual Exploitation by Psychotherapists. Policy No. 8–010 prohibits sexual contact between patients and counselors and provides a defined procedure for investigating reports of exploitation. Plaintiff alleges that defendant breached the investigation procedure provided in that

policy by inadequately training the investigative committee members, by not beginning the investigation at the earliest possible moment, by appointing to the committee a person biased by having treated the patient, and by not telling the committee about the settlement reached with the patient.

Finally, plaintiff points to Hazelden Policy No. 7–001, Grievances. Policy No. 7–001 allows an employee with a grievance to request the assistance of another employee in writing and presenting the grievance. Plaintiff contends she was denied the assistance and support of other employees in violation of that policy.

Personnel policies are enforceable as employment contracts if they are sufficiently definite to meet the requirements for unilateral contracts. *Pine River State Bank v. Mettille,* 333 N.W.2d 622, 626–27 (Minn. 1983). Whether the language rises to the level of a contract is a question of law. *Hunt v. IBM Mid Am. Employees Fed. Credit Union,* 384 N.W.2d 853, 856 (Minn. 1986).

This Court finds that Hazelden's written policies do constitute part of an employment contract between plaintiff and defendant. These provisions are not simply general statements of policy. *Pine River,* 333 N.W.2d at 626. Rather, the policies provide particular procedures which defendant was obligated to follow. The cited policies constitute offers which were communicated to the plaintiff by dissemination of the policy manual. Plaintiff accepted the offers and provided consideration for their enforceability by maintaining employment with defendant. *Id.* at 626–27.

■ Policy 8–010, Sexual Exploitation by Psychotherapists, was formulated by defendant in response to the enactment of Minnesota Statutes, § 148A.03, which exposes employers to liability if they fail to make certain responses to a patient's charge of sexual exploitation by a therapist. Policy 8–010 was approved by Hazelden's board of directors in April, 1987, and

was utilized in plaintiff's case.[2] Policy 8–010 is specifically applicable to the investigation of, and response to, patient allegations of sexual exploitation by psychotherapists. This was precisely the case presented to defendant by this former patient. Clearly, Policy 8–010's procedures were intended to govern the investigation of the former patient's allegations. Accordingly, under the canon of construction of *ejusdem generis,* the specific procedures set out in Policy 8–010 properly supersede the general procedures contained in Policy 5–001 and Policy 7–001. *See generally* 4A Dunnel, *Minnesota Digest* Contracts § 8.10(b).

■ Defendant, faced with this sexual exploitation allegation, implemented Policy 8–010. Plaintiff offers no evidence that defendant departed from the procedures set out in Policy 8–010. Plaintiff, nevertheless, challenges the quality of defendant's compliance with Policy 8–010 in four respects. First, plaintiff complains the training of the sexual exploitation investigative committee was insufficient. Policy 8–010 requires that the investigative committee be "trained in sexual exploitation investigation." Hazelden claims the committee was instructed by defendant's attorneys regarding sexual exploitation investigation prior to conducting their inquiry. Plaintiff acknowledges that "the committee was trained by a Hazelden attorney...." Plaintiff's Supplemental Memorandum in Opposition to Summary Judgment at 7–8 (February 2, 1990). The Court finds that all that was required under Policy 8–010 was that the committee receive training; the committee did receive such training. The court finds no violation of this aspect of the employment agreement.

■ Second, plaintiff complains that the investigative process was not begun quickly enough. Policy 8–010 requires that the committee begin its investigation "at the earliest possible moment." Defendant was contacted by the former patient in December 1986, and defendant advised plaintiff of

---

**2.** Policy 8–010, adopted subsequent to the implementation of Policy 5–001 and Policy 7–001, became enforceable as a modification of the

original employment contract. *Pine River,* 333 N.W.2d at 627.

the accusations made against her in April 1987. It is Hazelden's position that during the nearly 4 months before plaintiff was notified of the allegations, it could not confront her because Hazelden was bound by the complaining patient's request for confidentiality. Plaintiff concedes that defendant was so bound. Meleen Depo. at 123 (December 1, 1989); Plaintiff's Supplemental Memorandum in Opposition to Summary Judgement at 8 (February 2, 1990). Once the patient consented to notification, plaintiff was told and the investigation was begun. Defendant's obligation to honor the patient's request for confidentiality prevented defendant from beginning the investigation any sooner. The Court finds no violation of defendant's policy here.

■ Third, plaintiff complains a committee member had a conflict of interest arising from his position as supervisor of a unit in which the complaining patient had received treatment. Plaintiff asserts his membership on the committee breached Policy 8–010's requirement that the investigative procedure be carried out "while remaining highly sensitive to the rights of both the patient and the clinical staff member." The Court sees nothing in the cited provision which would prevent this person from serving on the investigative committee.

Fourth, plaintiff complains that the settlement with the complaining patient should have been disclosed to the committee because of its bearing on the patient's credibility. A review of the policy reveals no language in Policy 8–010 requiring disclosure of any settlement. Indeed, as defendant points out, disclosure of the settlement could have been worse: disclosure may well have conveyed a suggestion that the patient's accusation was meritorious.

■ Plaintiff got all the procedure she was due under the employment contract. She, perhaps understandably, would like something more. But, this was a private contract; no right to constitutional due process or proof beyond a reasonable doubt existed. Plaintiff's private expectations and due process concepts are not part of the employment contract. Defendant did

all that was required under Policy 8–010. The Court finds that defendant followed Policy 8–010 in "good faith," as contemplated by Minn.Stat. § 148A. After the investigation defendant concluded that sexual contact between plaintiff and the patient did occur, and terminated plaintiff pursuant to the procedure outlined in the policy. Summary judgment on the wrongful termination claim is granted defendant and Count I is dismissed.

### B. Count II—Defamation

■ In Count II plaintiff brings a claim for defamation. In order to succeed on a defamation claim, a plaintiff must prove 1) a false statement 2) tending to harm the plaintiff's reputation 3) was published, that is, communicated to someone other than the plaintiff. *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 255 (Minn.1980). Statements are defamatory *per se* and actionable without proof of actual damages if they affect the plaintiff in his or her business, trade, profession, office, or calling. *Stuempges*, 297 N.W.2d at 255. Minnesota recognizes the doctrine of compelled self-publication. *Lewis v. Equitable Life Assurance Soc'y*, 389 N.W.2d 876, 888 (Minn. 1986).

Plaintiff's complaint alleges both compelled self-publication and publication by defendant. Discovery revealed no evidence of defamatory statements made by defendant to third persons and plaintiff apparently has abandoned all but the self-publication claim; plaintiff now relies exclusively on the self-publication claim.

This Court, in its order of May 1, 1989, found that plaintiff's self-publication claim is subject to defendant's qualified privilege. A qualified privilege can be abused and lost, however, if plaintiff shows defendant acted with actual malice. *Lewis*, 389 N.W.2d at 890 (*citing Stuempges*, 297 N.W.2d at 257). Actual malice is defined as "actual ill will, or a design causelessly and wantonly to injure plaintiff." *McBride v. Sears, Roebuck and Co.*, 306 Minn. 93, 98, 235 N.W.2d 371, 375 (1975). Whether a qualified privilege has been lost is normally a jury question. *Lewis*, 389 N.W.2d at 890.

Defendant argues that plaintiff has failed to present any evidence whatsoever

of malice and therefore summary judgment is appropriate. Plaintiff argues a fact question regarding the abuse of the privilege is raised because defendant failed to "fairly and adequately investigate the charges of [the] accuser and conducted an investigation that was deliberately unfair." Specifically, plaintiff argues malice is demonstrated because a) defendant did not notify her of the charges until April 1987; b) defendant settled with the patient without investigating the veracity of the charges; c) the investigative committee was insufficiently trained and one member had a conflict of interest and made inappropriate remarks during the investigation; d) plaintiff was suspended with pay and told not to discuss the matter with other employees while the investigation was pending; e) the committee did not examine medical records, exchange notes with each other, or contact potential witnesses named by plaintiff; and f) defendant did not advise the committee of the financial settlement made with the patient.

Contrary to plaintiff's assertions, she has failed to present a triable issue regarding malice. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Defendant, confronted with allegations of serious misconduct, undertook an investigation as required by Minn.Stat. § 148A and Hazelden Policy 8–010. The examination clearly was not driven by ill will or a plan to injure the plaintiff. In addition, as demonstrated above, defendant followed its investigative procedures carefully and in good faith. Plaintiff's examples of ill will are nothing more than a restatement of what she perceives as inadequacies in the investigative procedure. Plaintiff was not entitled to more than she received. The mere fact that an investigation was conducted does not evidence malice. *McBride*, 306 Minn. 93, 97, 235 N.W.2d 371, 374 (1975). Summary judgment on the defamation claim is granted to defendant and Count II is dismissed.

### C. Count V—Negligent Infliction of Emotional Distress

■ In Count V plaintiff alleges negligent infliction of emotional distress. In order to recover on a claim of negligent infliction of emotional distress, a plaintiff must demonstrate negligence by the defendant which caused her emotional distress, physical manifestations of the distress, and that she was within the zone of physical danger of the negligent act. *Leaon v. Washington County*, 397 N.W.2d 867, 875 (Minn.1986). An exception to the zone of danger rule permits a plaintiff to recover for emotional distress caused by a direct invasion of her rights, such as defamation, malicious prosecution, or other willful, wanton, or malicious conduct. *State Farm Mutual Auto. Ins. Co. v. Village of Isle*, 265 Minn. 360, 367–68, 122 N.W.2d 36, 41 (1963). Because plaintiff's defamation claim has been dismissed, there is no basis for a negligent infliction of emotional distress claim. Defendant is granted summary judgment on the negligent infliction of emotional distress claim and Count V is dismissed.

### D. Count VI—Intentional Infliction of Emotional Distress

■ In Count VI, plaintiff seeks recovery for intentional infliction of emotional distress. To state a claim for intentional infliction of emotional distress plaintiff must prove 1) extreme and outrageous conduct 2) that was intentional or reckless 3) which caused severe emotional distress. *Hubbard v. United Press Int'l*, 330 N.W.2d 428, 438–39 (Minn.1983). The cause of action is a narrow one. *Id.* at 439. Not only must a plaintiff demonstrate conduct "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community," she must also meet an extremely high threshold of severe distress—"distress so severe that no reasonable [person] could be expected to endure it." *Id. (quoting Restatement (Second) of Torts § 46 (1965)).*

Plaintiff argues that while there may have been no single outrageous act by defendant, defendant's entire course of conduct surrounding the investigation of the former patient's allegations, coupled with

**694**

defendant's position of power and defendant's knowledge of plaintiff's susceptibility to distress, constitutes extreme or outrageous conduct. Further, plaintiff argues that her distress was so much more severe than the stress ordinarily associated with loss of a job that it is beyond the endurance of a reasonable person.

Plaintiff simply has not made a showing sufficient to establish the existence of the elements essential to a claim for intentional infliction of emotional distress. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The court finds that the conduct directed toward plaintiff during the investigation was not extreme, outrageous, or ill-motivated. Under Minn.Stat. 148A and Hazelden Policy 8–010, defendant was obligated to conduct an investigation and, as discussed, the investigation was a temperate reaction to serious allegations. The investigation was carried out within the parameters of the employment contract which existed between plaintiff and defendant. Plaintiff was afforded all the process to which she was due.

Defendant's actions do not rise to the level of atrociousness required by *Hubbard.* This lack of evidence of extreme and outrageous conduct renders plaintiff's claim for intentional infliction of emotional distress untenable and this Court need not determine whether she has met her burden of production with regard to the remaining elements. Accordingly, summary judgment is granted defendant on the intentional infliction of emotional distress claim and Count VI is dismissed.

Based on the files, records, and proceedings herein, IT IS ORDERED that:

1. Defendant's motion for summary judgment on plaintiff's wrongful termination, defamation, negligent infliction of emotional distress, and intentional infliction of emotional distress claims is granted.

2. The remaining counts of the complaint (Counts I, II, V, and VI) are dismissed.