**David J. FLOYD, Plaintiff–Appellant,**

v.

**COORS BREWING COMPANY, a Colorado corporation; and Bradley, Campbell, Carney & Madsen, P.C., a Colorado professional corporation, Defendants–Appellees.**

No. 96CA1059.

Colorado Court of Appeals,
Div. I.

July 24, 1997.

As Modified on Denial of Rehearing
Oct. 2, 1997.

Certiorari Granted Feb. 23, 1998.

Cheryl Redmond Doyle, Denver, for Plaintiff–Appellant.

Hall & Evans, L.L.C., Daniel R. Satriana, Jr., Steven M. Gutierrez, Denver, for Defendant–Appellee Coors Brewing Company.

Brega & Winters, P.C., Charles F. Brega, Wesley B. Howard, Denver, for Defendant–Appellee Bradley, Campbell, Carney & Madsen, P.C.

Opinion by Judge CRISWELL.

Plaintiff, David J. Floyd, appeals from the judgment dismissing all of the claims asserted by him against Coors Brewing Company (Coors) and Bradley, Campbell, Carney, and Madsen, P.C. (the lawyers). We affirm in part, reverse in part, and remand for further proceedings.

The events giving rise to this litigation are those surrounding the termination of plaintiff's employment by Coors. At the time of his termination, plaintiff had been employed by Coors for 15 years and was its director of security, safety, and occupational health.

Plaintiff's termination was based upon his alleged misuse of company funds, his alleged inability to account for such funds, and his alleged sexual improprieties with a female subordinate. He appealed his termination pursuant to certain of Coors' written policies to an internal appeals panel. That panel, however, approved the termination.

Plaintiff then instituted this action. In his original complaint, he asserted six claims for relief, including a claim based upon 42 U.S.C. § 1983 (1994). As a result of the inclusion of this claim, the cause was removed to the federal court which dismissed his civil rights claim and remanded the cause to the trial court.

The five remaining claims were based upon breach of contract and promissory estoppel against Coors and upon wrongful discharge, outrageous conduct, and violation of Colorado's Organized Crime Control Act (COCCA), § 18–17–101, et seq., C.R.S. (1986 Repl.Vol. 8B), against both Coors and the lawyers.

All of these claims, however, were based upon a common core of factual allegations.

Plaintiff alleged that, in his capacity as Coors' director of security, safety, and occupational health, he had engaged in a series of covert drug purchases under the direction of and with the full approval and cooperation of his supervisors. He alleges that these purchases were undertaken to discover the use of illicit drugs by Coors' employees. He asserts that, because such purchases by a private individual, such as he, were illegal, arrangements were made to fund the purchases by monies deposited in, and later withdrawn from, a bank account of the lawyers, who represented Coors.

He alleges that, when it appeared that this clandestine operation might become known, his supervisors conspired to discharge him, so as to make it appear that he had engaged in the previous illegalities solely on his own.

The trial court initially dismissed plaintiff's claims for wrongful discharge, outrageous conduct, and violation of COCCA based solely upon plaintiff's pleadings. Thereafter, the judge who passed upon these claims recused herself, and a different judge, in response to Coors' motion for summary judgment, dismissed plaintiff's breach of contract and promissory estoppel claims.

## I.

■ As a preliminary matter, we address the lawyers' assertion that plaintiff's appeal of the judgment dismissing the claims against them is untimely. We reject that assertion.

When multiple parties or claims are joined in an action, a trial court may direct the entry of a final judgment as to fewer than all of the claims or all of the parties only upon a determination that there is no just reason for delay and with the express direction for the entry of judgment. Without such a determination and directive, any order of dismissal is subject to revision at any time before the entry of a judgment adjudicating all of the claims. C.R.C.P. 54(b); *Berry v. Westknit Originals, Inc.*, 145 Colo. 48, 357 P.2d 652 (1960); *Forbes v. Goldenhersh*, 899 P.2d 246 (Colo.App.1994).

Here, the trial court entered an order dismissing plaintiff's COCCA, outrageous con-

duct, and wrongful discharge claims against both defendants on April 27, 1995. Later, the trial court entered an order granting plaintiff's motion to dismiss the contract breach and promissory estoppel claims against the lawyers. Neither of these orders contained the requisite certification under C.R.C.P. 54(b). Hence, because there were still outstanding claims for contract breach and promissory estoppel against Coors, such orders were not final judgments.

Plaintiff's remaining claims were not dismissed until April 26, 1996. Hence, there was no final judgment from which plaintiff could have appealed until this latter date. And, this appeal was filed in a timely fashion thereafter.

## II.

■ Plaintiff first contends that the first trial judge erred by refusing to vacate the previous order dismissing the three claims on the pleadings when she concluded that her recusal was necessary. We conclude, however, that the second judge's substantive review of this order rendered any prior refusal to vacate harmless.

· After plaintiff's COCCA, outrageous conduct, and wrongful discharge claims were dismissed, plaintiff filed a motion to recuse the judge then assigned to the cause. That judge granted the motion and recused herself.

After this recusal, plaintiff asked that the initial judge's action in dismissing the three claims be reconsidered. After a full briefing by the parties of the relevant issues, the newly assigned judge denied plaintiff's motion for reconsideration, based on his determination that the original order of dismissal was correct.

Hence, because of this later independent review, any error committed by the original judge in not vacating the previous order was rendered harmless.

## III.

Plaintiff argues that the trial court erred in dismissing his outrageous conduct, wrong-

ful discharge, and COCCA claims on the pleadings. We agree in part.

## A.

In considering either a motion for judgment on the pleadings or a motion to dismiss, a court must construe the allegations of the pleadings strictly against the movant, must consider the allegations of the opposing party's pleadings as true, and should not grant the motion unless the pleadings themselves show that a dismissal is required. And, in the case of a motion to dismiss, the pleadings must demonstrate that the non-moving party is entitled to no relief under any statement of facts which might be proved in support of the claims. Appellate review of such motions is *de novo*. *Humphrey v. O'Connor*, 940 P.2d 1015 (Colo.App.1996).

## B.

In his complaint, plaintiff alleged that his COCCA claim was based on §§ 18–17–104(3) and 18–17–104(4), C.R.S. (1986 Repl. Vol. 8B). These statutes provide that:

(3) It is unlawful for any person employed by, or associated with, any enterprise to knowingly conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity or the collection of an unlawful debt.

(4) It is unlawful for any person to conspire or endeavor to violate any of the provisions of subsection (1), (2), or (3) of this section.

Plaintiff alleged that, as a part of the undercover drug investigations that he was directed to engage in, defendants violated at least ten Colorado statutes referred to in § 18–17–103, C.R.S. (1986 Repl.Vol. 8B), as well as federal law. He also alleged that, as a result of these violations and as a part of defendants' attempts to conceal their misconduct, plaintiff was terminated from his employment.

However, we agree with the trial court's determination that plaintiff lacked standing to maintain a claim under COCCA because none of the damages alleged by him was caused by the underlying acts of criminality that he relied upon to establish a pattern of racketeering activity.

Because COCCA is patterned after the federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961, et seq. (1994), federal decisions construing RICO may be instructive upon similar issues arising under the state statute. *Tallitsch v. Child Support Services, Inc.*, 926 P.2d 143 (Colo.App.1996).

Under COCCA, a plaintiff need not demonstrate that some injury resulted from a *pattern* of racketeering. Rather, it is sufficient to demonstrate that one or more injuries to someone resulted from each of the predicate acts. Further, the plaintiff need not show injury resulting to himself from *each* illegal act alleged. *New Crawford Valley, Ltd. v. Benedict*, 877 P.2d 1363 (Colo. App.1993).

However, all this is not to say that the injury for which compensation is demanded need not be caused by *any* of the predicate acts.

Section 18–17–106(7), C.R.S. (1986 Repl.Vol. 8B), the provision specifying the civil remedies available under COCCA, allows "[a]ny person *injured by reason of* any violation of the provisions of section 18–17–104" to maintain a private cause of action. (emphasis supplied) The United States Supreme Court has construed the "injured by reason of" language in a nearly identical RICO provision to provide standing to a plaintiff only if that plaintiff has been injured by the conduct constituting the violation. A plaintiff can recover only for harm caused by one or more of the predicate acts. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).

Further, damages resulting from a wrongful discharge do not result from a predicate act unless the discharge itself constitutes one of the acts described by the statute. Hence, employees discharged for refusing to participate in, or for reporting, a pattern of racketeering activity lack standing to pursue a RICO claim because the discharge itself is not conduct violative of RICO. *See Miranda v. Ponce Federal Bank*, 948

F.2d 41 (1st Cir.1991); *Reddy v. Litton Industries, Inc.,* 912 F.2d 291 (9th Cir.1990); *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21 (2d Cir.1990); *Cullom v. Hibernia National Bank,* 859 F.2d 1211 (5th Cir. 1988).

In dictum, it has been suggested that a claim might be sustained under RICO if the employee's discharge constituted the commission of the crime of obstruction of justice. *See Miranda v. Ponce Federal Bank, supra.* However, no such claim is asserted here. Rather, plaintiff alleged that his discharge resulted from his superiors' attempt to cover up their prior criminal acts; he does not allege that such cover-up was itself a predicate act under COCCA.

Hence, we conclude that the allegations at issue were insufficient to provide plaintiff with standing to pursue any COCCA claim. We need not, therefore, address defendants' other contentions with respect to that claim.

### C.

Plaintiff next contends that the trial court erred by dismissing his outrageous conduct claim against all defendants at the pleading stage. With this contention, we agree.

We first observe that, in their petition for rehearing, the lawyers argue that, because plaintiff did not refer to noneconomic damages in a disclosure statement filed with the trial court several months after that court had dismissed, on the pleadings, his claim for outrageous conduct, plaintiff has somehow abandoned that claim. However, because the lawyers did not raise this issue either before the trial court or in any brief filed in this court, we decline to address it. See *Flagstaff Enterprises Construction, Inc. v. Snow,* 908 P.2d 1183 (Colo.App.1995) (argument first presented in reply brief will not be considered); *Mohawk Green Apartments v. Kramer,* 709 P.2d 955 (Colo.App.1985) (issues not raised in the trial court will not be considered on appeal).

The elements of the tort of extreme and outrageous conduct are: (1) the defendant engaged in extreme and outrageous conduct; (2) the defendant engaged in such conduct recklessly or with the intent of causing the plaintiff severe emotional distress; and (3) defendant's conduct caused plaintiff to suffer severe emotional distress; accompanying physical injury is not required. *Culpepper v. Pearl Street Building, Inc.,* 877 P.2d 877 (Colo.1994).

Liability for outrageous conduct can be found only if the conduct is so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency. Whether specified conduct is sufficiently outrageous to be actionable is normally a question for the jury. However, it is for the court to determine, in the first instance, whether reasonable persons could differ on this issue. *Rugg v. McCarty,* 173 Colo. 170, 476 P.2d 753 (1970); *Meiter v. Cavanaugh,* 40 Colo.App. 454, 580 P.2d 399 (1978).

Ordinarily, the mere discharge of an employee, without more, cannot support a claim of outrageous conduct. *Bigby v. Big 3 Supply Co.,* 937 P.2d 794 (Colo.App.1996). Here, however, plaintiff alleges conduct that went far beyond his mere termination. He alleges that defendants conducted illegal undercover drug investigations, ordered plaintiff to participate in the investigations, "laundered" the proceeds used in the investigation through the lawyers' trust account, and later discharged plaintiff to conceal their involvement and to place all blame for any illegal conduct upon him.

Giving plaintiff the benefit of all proper inferences, we conclude that reasonable people could differ on the question whether this alleged series of acts was "outrageous." *See Barham v. Scalia,* 928 P.2d 1381 (Colo.App. 1996) (allegations by terminated professor that dean disliked him, sent secret memorandum to trustees to initiate dismissal proceedings, and instructed other faculty not to communicate with him sufficient to state claim for outrageous conduct); *see also Meiter v. Cavanaugh, supra* (combination of acts which alone might be considered simply isolated unkindness, in combination, constituted sufficiently outrageous conduct to survive a motion for directed verdict). Hence, the trial court erred in dismissing this claim.

## D.

Plaintiff also contends that the trial court erred in dismissing his wrongful discharge claim against Coors at the pleading stage. We also agree with this contention.

The public policy exception to the at-will employment doctrine is based upon the notion that an employer should not be allowed to discharge an employee with impunity for reasons that contravene widely accepted and substantial public policies. The policies which may invoke this exception are not subject to a precise specification. They are those, however, that involve a "matter that affects society at large rather than a purely personal or proprietary interest of the plaintiff or employer, leads to an outrageous result clearly inconsistent with a stated public policy, or 'strike at the heart of a citizen's social rights, duties, and responsibilities.'" *Crawford Rehabilitation Services, Inc. v. Weissman*, 938 P.2d 540 (Colo.1997).

Hence, in order for this exception to apply, the public policy invoked must relate to behavior that has such an impact upon the public that interference with an employer's business decisions is justified. *Rocky Mountain Hospital & Medical Service v. Mariani*, 916 P.2d 519 (Colo.1996).

Contrary to the trial court's conclusion, the public policy exception is not limited to the factual circumstances described in *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100 (Colo.1992). There, the supreme court recognized the public's interest in prohibiting an employer from terminating an employee for refusing to engage in unlawful or unethical conduct. However, in addition to this circumstance, an employee may also show that the action by the employer violates a specific statute relating to the public health, safety, or welfare or that it would undermine a clearly expressed public policy relating to the employee's rights as a worker. *Crawford Rehabilitation Services, Inc. v. Weissman, supra.* See also *Lathrop v. Entenmann's, Inc.*, 770 P.2d 1367 (Colo.App.1989).

Here, plaintiff contends that he was ordered to perform illegal undercover narcotics investigations and that he was instructed to conceal these drug transactions, as well as the cash expenditures related to them. He asserts that he was then terminated so as to conceal the participation of certain of Coors' senior executives and of the lawyers in these transactions and to make it appear that plaintiff was solely responsible for any illegal activities.

Accepting plaintiff's allegations as true and viewing his claims in the light most favorable to him, we conclude that plaintiff's claims do implicate an important public policy. Deterring employers from concealing their illegal conduct by discharging an employee relates to a substantial public interest that affects society as a whole. Hence, we conclude that plaintiff has stated a cognizable claim for wrongful discharge in violation of public policy.

## IV.

Plaintiff also contends that the trial court erred by granting Coors' motion for summary judgment on his breach of contract and promissory estoppel claims. We disagree.

## A.

In reviewing a trial court's grant of summary judgment, we must determine whether there is a clear showing that there is no issue of material fact and, therefore, whether the moving party is entitled to judgment as a matter of law. *Churchey v. Adolph Coors Co.*, 759 P.2d 1336 (Colo.1988); *Knappenberger v. Shea*, 874 P.2d 498 (Colo.App.1994).

Once the party moving for summary judgment has met its initial burden of production, the burden shifts to the nonmoving party to establish, through specific facts, that a triable issue of fact exists. *Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708 (Colo.1987). Also, review of a judgment granting a motion for summary judgment is *de novo*. *Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board*, 901 P.2d 1251 (Colo.1995).

## B.

Plaintiff's claim of breach of contract is grounded upon the provisions of Coors' written policy that set forth the procedures for

the internal review of disciplinary actions taken against employees. He asserts that Coors not only did not follow the procedures adopted by its written policy, but that such procedures are inadequate and unfair. The undisputed evidence establishes, however, that such a claim is unsupportable.

■ If an employee, such as plaintiff here, seeks to rely upon an employee handbook or other written policy of the employer as the basis for an implied contract or promissory estoppel claim, that employee must accept the whole of that policy. The employee may not accept those portions of the policy that are deemed to be favorable and reject those that may be considered unfavorable. *Allsup v. Mount Carmel Medical Center,* 22 Kan.App.2d 613, 922 P.2d 1097, 1102 (1996) ("By [the employee] availing himself of the benefits (contending he has an implied contract by virtue of [the employer's] policies), [the employee] must also accept the responsibility of the policies—the grievance procedure.").

■ Further, in the case of a private employer, whose conduct is not restricted by the Fourteenth Amendment, there is no requirement that an employee disciplinary or grievance procedure unilaterally adopted by that employer incorporate concepts traditionally associated with procedural due process of law. Hence, courts should not read into provisions establishing such procedures requirements that are not described in those provisions. *Suburban Hospital, Inc. v. Dwiggins,* 324 Md. 294, 596 A.2d 1069 (1991); *Meleen v. Hazelden Foundation,* 740 F.Supp. 687 (D.Minn.1990), *aff'd,* 928 F.2d 795 (8th Cir.1991); *Pagdilao v. Maui Intercontinental Hotel,* 703 F.Supp. 863 (D.Hawai'i 1988).

Here, plaintiff's implied contract claim is grounded upon the provisions of a personnel policy of Coors that reads, in part, as follows:

Appeals involving charges of unjust treatment in which written disciplinary action has been taken, are reviewed by an Appeal Board. The employee may appeal the justification for the disciplinary action or the severity of the action.

. . . .

The Appeal Board will review the actions of management to determine if just cause existed for the disciplinary action and whether all applicable company policies were followed. Decisions of the C[onflict]-R[esolution] P[rocess] are final and binding on the Company, as well as the employee.

Other provisions of this policy provide that the Appeal Board is to be composed of six members, consisting of three of the disciplined employee's "peers," two members from Coors management, and one member from its Employee Relations Department. Such members are randomly selected from a list compiled from the employee records system, and the employee is granted the right to strike names from that list and to have substitutes appointed.

Plaintiff appealed his discharge to the Appeal Board. Names of members were selected to which plaintiff objected in part, and new members were selected. Thereafter, a hearing took place at the end of which plaintiff's discharge was upheld.

■ Plaintiff first argues that there did not, in fact, exist "good cause" for his discharge. This argument, however, is not available to him.

The policy upon which plaintiff relies specifically provides that the decision of the Appeal Board shall be final and binding upon both Coors and the employee. Hence, the only possible contract breach that plaintiff can assert would be one grounded upon allegations that the Appeal Board's decision resulted from a violation of the procedures adopted by that policy. *See Bellairs v. Coors Brewing Co.,* 907 F.Supp. 1448 (D.Colo.1995), *aff'd* 107 F.3d 880 (10th Cir.1997).

Upon this issue, plaintiff asserts that (1) he was restricted in the presentation of witnesses, (2) he was not allowed to have an attorney represent him before the Appeal Board, (3) other procedural irregularities occurred, and (4) the review procedure adopted by Coors' policy is intrinsically unfair.

■ However, the written policy upon which plaintiff relies specifically authorizes

the member from the Employee Relations Department to determine the relevance and admissibility of any information proffered. And, here, plaintiff made no offer before the Appeal Board to call any witnesses on his behalf, nor did he otherwise describe what information he wanted to present. Plaintiff has made no showing of any violation of any portion of the written policy as a result of any limitation placed upon him in this respect.

■ Further, the written policy does not authorize the appearance of attorneys for any of the parties before the Appeal Board. And, we would not be justified in concluding that an employer's unilateral adoption of an internal grievance procedure necessarily contemplates an adversarial hearing with legal representation. The denial of such representation in such proceedings, therefore, cannot be considered to be a violation of Coors' policy for internal review proceedings.

■ It is true that the internal review proceeding established by Coors does not make use of an independent neutral. To this extent, the persons conducting the review may not be wholly disinterested. However, we are aware of no requirement that an employer who voluntarily establishes an internal disciplinary review proceeding must adopt a procedure that is the substantial equivalent of arbitration. On the contrary, absent the review procedures implemented by Coors, plaintiff, as an at-will employee, would have had no right to have any type of review of Coors' disciplinary decision, except a court determination of any claimed violation of statute or public policy. Hence, the fact that the Coors' disciplinary policy may not provide all of the guarantees that would be afforded by a tribunal required to observe the requirements of procedural due process of law is irrelevant.

■ Finally, we have considered plaintiff's assertions with respect to other alleged procedural violations of Coor's policy and we reject them. Plaintiff waived some of these objections by failing to raise them during the Appeal Board process. In addition, in his response to Coor's motion for summary judgment, plaintiff presented insufficient evidence to support the assertion that any of these alleged irregularities violated any provision of the pertinent policy.

We conclude, therefore, that none of plaintiff's assertions about the alleged defects in Coors' disciplinary procedures can, as a matter of law, support any claim based upon an implied contract.

### C.

■ Promissory estoppel is an equitable concept developed to enforce, under appropriate circumstances, a unilateral promise for which no consideration was provided. *Soderlun v. Public Service Co.*, 944 P.2d 616 (Colo.App.1997). Promissory estoppel is only available as a remedy in the absence of an otherwise enforceable contract. *Scott Co. v. MK–Ferguson Co.*, 832 P.2d 1000 (Colo.App. 1991).

■ Here, because we have concluded that Coors' written policy provided the basis for an implied contract claim, the doctrine of promissory estoppel is inapplicable. *See Bellairs v. Coors Brewing Company, supra.*

### V.

Plaintiff finally argues that the trial court erred by suppressing several documents inadvertently provided to him by defendants through discovery. Because we conclude that the trial court may not have considered certain relevant factors, we remand this issue for its further consideration.

As a part of its responses to plaintiff's request for production, Coors furnished plaintiff with four documents that it later claimed were privileged as communications between client and counsel. The documents were initially accompanied by a response that was not signed by any Coors official. Later, however, this response was signed by such an official.

Coors claimed that, immediately upon discovery of these inadvertent disclosures, it requested the return of the four pertinent documents. It then sought a protective order suppressing use of the documents by plaintiff.

In support of such an order, counsel for Coors presented an affidavit that detailed the method *counsel* had used in reviewing documents to be supplied to plaintiff in response to his request. No showing was made, however, as to the procedure that Coors itself used in supplying the documents to counsel or the method of review used by the Coors' official before that official signed the response to plaintiff's request.

After reviewing the affidavit submitted, the trial court found three of the four documents to be privileged. Further, because it found their disclosure to have been inadvertent, it suppressed the documents, holding that Coors had not waived its attorney-client privilege.

■ The first document consists of a handwritten memorandum made contemporaneously during a meeting attended by the Director of Litigation of Coors, who is a lawyer. It contains legal opinions and advice given by that attorney with respect to plaintiff's claims.

■ The second document consists of a typed memorandum again memorializing the same meeting at which legal strategies for potential legal and criminal litigation involving plaintiff were discussed.

■ The third document consists of a handwritten memorandum from the Director of Litigation directed to the manager involved in plaintiff's termination. This document contains legal analysis and opinions.

Because these three documents contain legal opinions and advice given by an attorney from Coors' legal department to Coors employees concerning potential litigation between plaintiff and Coors, we agree with the trial court's conclusion that they fall within the scope of § 13–90–107(1)(b), C.R.S. (1987 Repl.Vol. 6A). Hence, they were privileged documents.

■ The attorney-client privilege, as codified in § 13–90–107(1)(b), is intended for the benefit of, and is personal to, the client. *Sholine v. Harris*, 22 Colo.App. 63, 123 P. 330 (1911). It is not, however, absolute and can be waived by the client. And, the voluntary disclosure of confidential communications to a potential adversary will waive the privilege. *Denver Post Corp. v. University of Colorado*, 739 P.2d 874 (Colo.App.1987).

■ To what extent, however, will a voluntary, but allegedly inadvertent, disclosure of such a communication waive the privilege?

No prior Colorado appellate opinion has considered this question. The decisions from other jurisdictions have taken three different approaches to the issue. For a general discussion of these three approaches, *see* M. Joffe & E. Rice, *Oops! Can I take It Back?*, 62 Def. Couns. J. 450 (1995); H. McNeil & C. Littlefield, *The Inadvertent Disclosure of Privileged Documents*, 30 Ariz. Atty 10 (November 1993).

Some courts have adopted an almost absolute "cat out of the bag" rule. These courts say that, once the communication has been disclosed, even through inadvertence, its disclosure cannot be retracted; the disclosure waives the privilege. *See In re Sealed Case*, 877 F.2d 976 (D.C.Cir.1989); *Federal Deposit Insurance Corp. v. Marine Midland Realty Credit Corp.*, 138 F.R.D. 479 (E.D.Va.1991).

Other courts, concluding that an inadvertent disclosure is the antithesis of a voluntary act, hold that, if truly inadvertent, the disclosure will not waive the privilege, and the communication can be retracted. *See Trilogy Communications, Inc. v. Excom Realty, Inc.*, 279 N.J.Super. 442, 652 A.2d 1273 (1994); *Mendenhall v. Barber–Greene Co.*, 531 F.Supp. 951 (N.D.Ill.1982). *See also* ABA Standing Committee on Ethics and Professional Responsibility, Formal Opinion No. 82–368 (Oct. 16, 1992) (if lawyer receives privileged documents under circumstances in which their disclosure was "obviously inadvertent," lawyer has duty not to examine them but to return them).

Finally, in what has been described as the "modern trend," *see* H. McNeil & C. Littlefield, *The Inadvertent Disclosure of Privileged Documents, supra,* the majority of courts, at least in circumstances involving disclosures made during formal discovery proceedings attendant to litigation, adopts an "ad hoc" approach. Under this approach, the courts consider a number of factors to determine whether the disclosure resulted from excusable inadvertence or from some

chargeable negligence or other fault. Among the factors considered by these courts are: (l) the extent to which reasonable precautions were taken to prevent the disclosure of privileged information; (2) the number of inadvertent disclosures made in relation to the total number of documents produced; (3) the extent to which the disclosure, albeit inadvertent, has, nevertheless, caused such a lack of confidentiality that no meaningful confidentiality can be restored; (4) the extent to which the disclosing party has sought remedial measures in a timely fashion; and (5) considerations of fairness to both parties under the circumstances. *See United States v. de la Jara*, 973 F.2d 746 (9th Cir.1992); *Monarch Cement Co. v. Lone Star Industries, Inc.*, 132 F.R.D. 558 (D.Kan.1990).

We conclude that this latter so-called "ad hoc" approach is the most appropriate means to determine whether an alleged inadvertent disclosure should be considered a waiver of the privilege, at least in those instances in which the disclosure has occurred during the course of judicial discovery proceedings.

Given our conclusion in this respect, the trial court upon remand should reconsider its decision in light of the foregoing comments. And, because Coors itself signed a document approving the disclosure, the reasonableness of its actions and procedures, as well as the reasonableness of the actions and procedures of its counsel, should be considered. The trial court shall, of course, have discretion to determine whether an evidentiary hearing need be conducted with respect to this issue.

The judgments dismissing plaintiff's claims for contract breach, promissory estoppel, and alleged violation of the Organized Crime Control Act are affirmed. The judgment dismissing the claim against Coors for wrongful discharge in violation of public policy and the claim against both defendants for outrageous conduct is reversed, and the cause is remanded to the trial court for further proceedings consistent with the views set forth in this opinion.

METZGER and MARQUEZ, JJ., concur.