**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 12 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

KEVIN MCGUIRE,

      Plaintiff - Appellee,

vs.

CONTINENTAL AIRLINES, INC.,

      Defendant - Appellant.

No. 98-1388

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 95-WY-1813-WD)

Diane MacArthur Brown, Olsen & Brown, L.L.C., Niwot, Colorado, on the brief for Plaintiff - Appellee.[*]

Mary H. Stuart, Holme Roberts & Owen, L.L.P., (Daniel R. Satriana, Jr., Alan Epstein and Marianne E. Pierce, Hall & Evans, L.L.C., on the briefs), Denver, Colorado, for Defendant - Appellant.

Before **KELLY**, **ALARCON**,[**] and **HENRY**, Circuit Judges.

**KELLY**, Circuit Judge.

---

[*]The appellee elected not to present oral argument.

[**]The Honorable Arthur L. Alarcon, Senior Circuit Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

This appeal involves the application of Colorado law to disciplinary procedures and an internal grievance process contained in an employee handbook. Appellant Continental Airlines, Inc. (Continental) appeals from a jury verdict in favor of appellee Kevin McGuire for $200,000 damages on alternative theories of breach of implied contract/promissory estoppel. Our jurisdiction arises under 28 U.S.C. § 1291, and we reverse.

## Background

Mr. McGuire began working for Continental as a machinist on July 21, 1987. He remained at the same job, with the exception of one short transfer to another position, until his termination on March 28, 1994 for violation of Continental's attendance policy. The job of machinist was covered by various rules laid out in an employee handbook – Continental's Technical Operations Employment Policy for Technical Operations, Facilities Maintenance and GSE Hourly Employees ("handbook"). Appendix D of the handbook, entitled "Attendance Policy," was designed to "ensure that each employee is aware and understands what the Company considers an acceptable level of attendance, and to establish the disciplinary action imposed on the employee when appropriate." III Aplee. Supp. App. at 542. When an employee began to reach "an unacceptable level" of absences, the handbook required that a supervisor meet

with the employee and counsel them "to assure that the employee is aware of the consequences."  Id. at 543.  If counseling failed to correct the problem, a four step disciplinary process was required.  This process consisted of: (1) a verbal warning after the fourth incident of absence in a twelve calendar month period; (2) a written warning after the fifth incident; (3) a termination warning after the sixth incident; and (4) termination after the seventh incident.    Id. at 543-44. [1]

It is uncontested that Continental followed the form of these procedures.  On December 15, 1993, Merle Toavs, McGuire's supervisor, counseled plaintiff regarding his absenteeism.    See Aplt. App. at 31.  A verbal warning was then given on January 19, 1994; followed by a written warning on February 8; a written termination warning on March 4; and finally a written notice of termination on March 28.    See id. at 40-41;  see also  Aplt. Supp. App. at 565-67 (testimony of McGuire that he received the warnings of the four step corrective process).

Mr. McGuire asserted, however, that Mr. Toavs incorrectly counted the number of incidents of absence he had accrued.  While Continental listed eight incidents on the notice of termination, Mr. McGuire contested at least two of

---

[1]The handbook defined incident as "[a]ny single specific period of continuous absence for a single reason."  III Aplee. Supp. App. at 542.  Absences, for purposes of discipline, included sick leave, tardiness/lateness, and unapproved personal absences.  Id.

these.  The first involved a lateness of twelve minutes for a meeting which Mr.

McGuire asserted was non-mandatory.  The second involved two absences from

work (January 5 thru 18 and January 31 thru February 7) which Mr. McGuire

claimed should be counted as a single incident under the Company's "Premature

Attempt to Return to Work" policy.  [2]  If these absences were removed, only six

would remain and Mr. McGuire could not be terminated.

After his termination, Mr. McGuire's first step in challenging the number

of incidents was to appeal using Continental's internal appeal procedure.

Chapter 20 of the handbook established a grievance procedure that employees

could use as follows:

> It is usually best for an employee to discuss any problem
> or disagreement regarding the proper application of
> Company policies and disciplinary action with his/her
> immediate supervisor.  Between the employee and the
> supervisor, nearly all problems and misunderstandings
> can be resolved quickly.
> . . .

---

[2]This section was part of Continental's Attendance Policy and stated:

> If an employee is absent and attempts prematurely to
> return to work but finds it necessary to again be absent
> because of the same illness, both absences will be
> considered as a single incident.  The second absence
> must have occurred within fourteen calendar days of the
> first absence in order to have both absences count as a
> single incident.

Aplee. Supp. App. at 543.

> If a matter involving the proper application of Company policy or disciplinary action (including dismissal) is not resolved to the employee's satisfaction, the employee may file a formal appeal using Continental's Appeal Procedure.

Id. at 537. The Appeal Procedure consisted of a four step process, whereby the disciplinary action would be reviewed in turn by the employee's supervisor (Step One), a local management representative (Step Two), senior management representatives (Step Three), and finally a certified arbitrator whose decision "will be final and binding on both parties" (Step Four). Id. at 539.

Representation was available for the appellant at every stage in the person of employee representatives elected solely by Continental's employees, i.e. the Employee Representative (Step One); the Local Appeal Committee (LAC) (Step Two); and the System Council Appeal Committee (SAC) (Steps Three and Four). With the exception of Step One appeals, the policy required the representative, rather than the employee, to initiate the next level of the appeal.

Randall Gebben was the Employee Representative responsible for Mr. McGuire's Step One appeal. II Aplee. Supp. App. at 475-76. However, Section E of the Appeal Procedure provided that in all cases involving termination, the appeal would proceed on an expedited basis and would begin at the Step Two level. See III Aplee. Supp. App. at 541. Therefore, Mr. Gebben, as the representative, initiated a Step Two appeal on behalf of Mr. McGuire to

challenge the grounds for termination.  II Aplee. Supp. App. at 476.  At the Step

Two appeal, Mr. Gebben's representation ended,      see II Aplt. Supp. App. at 706,

and Mr. McGuire was represented by the LAC, primarily by its chairman, Dave

Conley.  Id. at 703, 725.  Although the Appeal Procedure guaranteed him the

right to attend the Step Two hearing in person, Mr. McGuire chose not to attend.

Id. at 584-85. [3]

After the presentation of evidence by both sides, the hearing officer, Marc

Bradell determined that Continental had properly counted the incidents of

absence and upheld the termination.  Aplt. App. at 47-48.  Under the terms of the

Appeal Procedure, a Step Three appeal could only be brought "[i]f in the opinion

of the Local Appeal Committee (LAC), the answer received at the Step Two

Level is not satisfactory ."  III Aplee. Supp. App. at 539 (emphasis added).  Mr.

McGuire never requested the LAC to initiate a Step Three appeal,      see II Aplt.

Supp. App. at 704-05, and the internal grievance process ended at this point. [4]

---

[3]Mr. Gebben testified that Mr. McGuire could not attend the hearing because of a personal conflict.  He requested a postponement of the hearing so that Mr. McGuire could attend personally, but the postponement was denied.  II Aplee. Supp. App. at 477, 479.  This testimony is contradicted by both Dave Conley and Marc Bradell, the hearing officer, who testified that nobody ever asked for a postponement of the hearing.  Id. at 705, 723-24.  We need not decide this issue, however, because the Appeal Procedure did not give a right to postpone a hearing and Mr. McGuire does not challenge his termination on this ground.

[4]Mr. Gebben, who sat in on the Step Two appeal, informed Mr. Conley, immediately following the hearing, that he felt the decision should be appealed to

Subsequently, Mr. McGuire filed a complaint against Continental in federal district court, alleging unlawful discrimination in violation of Title VII, breach of implied contract and promissory estoppel. The case went to the jury, which held in favor of Continental on the Title VII claim, [5] but awarded Mr. McGuire $200,000 in damages on the alternative claims of implied contract/promissory estoppel. Defendant's post-trial motion for judgment as a matter of law was denied and Continental appeals, claiming that the district court erred in submitting either the breach of contract claim or the promissory estoppel claim to the jury.

_____

Step Three. II Aplt. Supp. App. at 706. However, there is no indication that this was anything other than Mr. Gebben's personal opinion. See id. at 707. There is no evidence in the record that Mr. McGuire either desired or sought a Step Three appeal or requested Mr. Gebben to seek one on his behalf. In fact, there is some indication that it was Mr. Conley's practice to intitiate a Step Three appeal for any employee who requested one. See I Aplee. Supp. App. at 51-52 (trial court referring to an affidavit by Mr. Conley to this effect – unfortunately, this affidavit is not part of the record on appeal). Regardless, Mr. Conley, after discussing the merits of the case with the other two members of the LAC, decided not to seek a Step Three appeal. Id.

[5]Mr. McGuire does not appeal the judgment against him on his Title VII claim.

## Breach of Implied Contract

We review de novo the denial of a motion for judgment as a matter of law, viewing the evidence in the light most favorable to the non-moving party. [6] See Baker v. Barnard Constr. Co., Inc., 146 F.3d 1214, 1220 (10th Cir. 1998). Under this standard, we assume that Continental incorrectly counted the number of incidents when terminating Mr. McGuire. This was the ground on which the district court denied Continental's motion for partial summary judgment. See I Aplee. Supp. App. at 51 ("[A] genuine issue of material fact exists as to whether defendant properly counted plaintiff's absences. If the plaintiff's absences were not properly counted in accordance with the T.O.P. handbook, then a jury could find a breach of an implied contract."). Continental contends, however, that Mr. McGuire received every procedural step required by both the Attendance Policy and the Appeal Procedure, and is therefore barred from relitigating his claim in federal court.

Colorado follows the doctrine of employment at-will: employment "may be terminated by either party without cause and without notice, and [] termination does not give rise to a cause of action." Crawford Rehabilitation Servs. v.

---

[6]Mr. McGuire attempts to characterize the issue on appeal as a challenge to the sufficiency of the evidence, and fails to contest – or even mention – the legal authority raised in Continental's briefs. We reject this mischaracterization and address the appeal solely as a question of law.

<u>Weissman</u>, 938 P.2d 540, 546 (Colo. 1997). This doctrine functions in the absence of an employment contract between the parties. An employer can bind itself by distributing an employee handbook detailing a system of progressive disciplinary procedures to be followed prior to termination. "An employee originally hired under a contract terminable at-will may be able to enforce such termination procedures under a theory of breach of implied contract or promissory estoppel." <u>Id</u>. at 547.

Mr. McGuire does not contest the fact that he was originally hired as an at-will employee. Rather, he claims that Continental's handbook created an implied contract that the Attendance Policy would be correctly applied. From the time of its initial answer until the close of evidence at trial, Continental denied that any implied contract of employment had been formed by the handbook, although apparently never disputing the application of the appeal procedures. It is apparent that the parties were somewhat obscure in framing the issues for trial. On appeal, Continental admits that an implied contract existed, at least insofar as the appeal procedures are concerned, and we accept that admission for purposes of this opinion. [7]

_____

[7]Mr. McGuire contends that Continental should be judicially estopped from arguing a position on appeal contrary to its position at trial. Continental denied the existence of any implied contract up until the close of evidence. Then, for the first time, during a final jury instruction conference, Continental attempted to stipulate that a contract existed. The stipulation was offered in an attempt to

Assuming, as we do, that a contract existed, the pivotal question in this case is what remedies were available to Mr. McGuire for an alleged breach of that contract. Ordinarily, an employee must seek to exhaust an employer's exclusive internal grievance process before seeking judicial relief. See Jefferson County Sch. Dist. v. Shorey, 826 P.2d 830, 844 (Colo. 1992) (grievance procedure of a collective bargaining agreement); see also Albertson's, Inc. v. Rhoads, 582 P.2d 1049, 1050 (Colo. 1978) ("[I]f the grievance procedure is the exclusive remedy then it must be exhausted."); but see Musgrave v. Eben Ezer Lutheran Institute, 731 P.2d 142 (Colo. 1986) (employee need not exhaust grievance procedures in order to recover unemployment compensation benefits). Although Continental's Appeal Procedure speaks in somewhat permissive terms (i.e. an employee "may" submit an appeal), the Colorado Supreme Court has held in cases involving similar grievance procedures "that use of the term 'may' was

eliminate that part of Jury Instruction 13 which dealt with McGuire's claim of promissory estoppel. See Aplt. Second Supp. App. at 19-20 (counsel admitting to a contract so that "the estoppel issue goes by the wayside."). The trial court rejected the stipulation as untimely.

While we empathize with Mr. McGuire's frustration at Continental's apparent last minute flip-flopping in an attempt to gain tactical advantage, it is well established that judicial estoppel does not exist in the Tenth Circuit. See Webb v. ABF Freight System, Inc., 155 F.3d 1230, 1242 (10th Cir. 1998). Moreover, our decision in this case is not in any way affected by Continental's admission on appeal. Under our standard of viewing the evidence in the light most favorable to Mr. McGuire, we would assume that an implied contract existed.

not intended to allow individual employee suits as an alternative to the grievance procedure." Albertson's , 582 P.2d at 1050.   Any doubt as to the application of the procedure is to be resolved in favor of exclusivity.   See id. (quoting  Republic Steel Corp. v. Maddox   , 379 U.S. 650, 658 (1965)).  Applying this standard, we hold that Continental's grievance procedure was the exclusive remedy for challenging a breach of the Attendance Policy.

Mr. McGuire availed himself of this procedure to challenge the number of incidents upon which his termination was based.   Continental's Attendance Policy defines an incident as "[a]ny single specific period of continuous absence for a single reason."  III Aplee. Supp. App. at 542.  Tardiness/Lateness is listed as an example of an incident.  Nowhere does the handbook state that lateness for a non-mandatory meeting will    not be counted as an incident.  Nor does the handbook specify what proof is necessary to show that an illness is the "same illness" for purposes of the "Premature Attempt to Return to Work" clause.   [8]  Id. at 543.  The Appeal Procedure was the proper mechanism for raising these claims. Mr. McGuire argued both of these issues on his Step Two appeal.  The

---

[8]We note, as did Mr. Bradell, that Mr. McGuire never challenged the incidents at the time they were counted in the disciplinary procedure.  See Aplt. App. at 48.  Mr. McGuire received a written warning on February 8, 1994 regarding the two periods which he alleged should have been counted as one, and received a March 4, 1994 written termination warning letter for the latenesses which he claims were for non-mandatory meetings.

hearing officer determined that "the termination was accomplished in accordance with the Technical Operations attendance policy." Aplt. App. at 48. Mr. McGuire did not attempt a Step Three appeal on this claim, the internal appeal process ended, and so did all claims as to the actual number of incidents involved in the termination decision.

An "employee may not accept those portions of the policy that are deemed to be favorable and reject those that may be considered unfavorable." Floyd v. Coors Brewing Co., 952 P.2d 797, 806 (Colo. Ct. App. 1997), reversed on other grounds, 978 P.2d 663 (Colo. 1999). Mr. McGuire's sole remedy as to whether or not an absence should properly be counted as an incident lay with Continental's internal grievance process.

The case of Allsup v. Mount Carmel Med. Ctr., 922 P.2d 1097 (Kan. Ct. App. 1996) (relied upon in Floyd, 952 P.2d at 806) is particularly instructive on this point. The plaintiff employee sued Mount Carmel for breach of an implied employment contract. Mount Carmel had a policy which provided a four step grievance procedure for disgruntled employees, which culminated in review by the Director of Personnel and the company Administrator whose decision "is final." Id. at 1099. The employee did not pursue the grievance process past the first step but filed suit in Kansas state court. In affirming summary judgment for Mount Carmel, the Kansas Court of Appeals held:

> The Mount Carmel grievance procedure . . . provided that '[t]he decision of the Administrator is final.' As such, the terms of the grievance procedure limited the employee's recourse to the procedure provided. Filing a grievance was optional, but under the terms of the policy, it was the only option.

Id. at 1101.

Mr. McGuire raised his challenge to the number of incidents in the Appeal Procedure. This issue was decided against him and the same argument is not available to him in court. See Floyd, 952 P.2d at 806. Therefore, "the only possible contract breach that plaintiff could assert would be one grounded upon allegations that the [hearing officer's] decision resulted from a violation of the procedures adopted by that policy." Id. Mr. McGuire does not argue that he was denied any of the steps of the disciplinary process or somehow kept from fully pursuing Continental's Appeal Procedure. Therefore, his claim of breach of implied contract must fail. See Bellairs v. Coors Brewing Co., 907 F. Supp. 1448, 1455 (D. Colo. 1995), aff'd, No. 95-1486, 1997 WL 107767 (10th Cir. March 12, 1997).

Moreover, his claim of promissory estoppel must fail for the same reason. Mr. McGuire asserts that he relied upon the provisions of the employee handbook to his detriment. Without an assertion that Continental failed to follow these procedures, the promissory estoppel claim lacks any foundation and must be dismissed.

- 13 -

In granting judgment in favor of Continental, we note the limited nature of our holding. An employee should not be given two bites at the same apple. Mr. McGuire had his opportunity to contest whether an absence was an incident or not when he brought his Step Two appeal. He did not show up at the hearing, lost, and did not attempt to go on to Step Three. Continental was bound by the decision of the Step Two hearing officer and so was Mr. McGuire. See III Aplee. Supp. App. at 537 (stating that Continental had the right to file an appeal beginning at Step Three). An employee must accept both the benefits and the responsibilities of an employee handbook which creates an implied contract.

REVERSED.